1   Brandon S. Reif (SBN 214706)
2   breif@reiflawgroup.com
    Marc S. Ehrlich (SBN 198112)
3   mehrlich@reiflawgroup.com
    **REIF LAW GROUP, P.C.**
4   1925 Century Park East, Suite 1700
5   Los Angeles, CA 90067
    Telephone: 310.494.6500
6   Email: docket@reiflawgroup.com
7
    Attorneys for Plaintiff
8   EMERSON EQUITY, LLC
9
10              **UNITED STATES DISTRICT COURT**

11      **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

12  | EMERSON EQUITY, LLC, a | Case No. 4:22-cv-06037-HSG |
13  California limited liability company,

14              Plaintiff,          **PLAINTIFF'S NOTICE OF MOTION
                                    AND MOTION FOR PARTIAL**
15                                  **SUMMARY JUDGMENT ON DUTY**
                v.                  **TO DEFEND**
16

17  FORGE UNDERWRITING LIMITED,     Judge:  Hon. Haywood S. Gilliam, Jr.
18  an unknown entity; VOLANTE      Courtroom 2, Oakland Courthouse
    INTERNATIONAL LIMITED, an
19  unknown entity; CERTAIN         Complaint Filed: September 12, 2022
    UNDERWRITERS AT LLOYD'S,        (San Mateo County Superior Court)
20  LONDON SUBSCRIBING TO           Complaint Served: September 15, 2022
    SECURITIES BROKER/DEALER        **Notice of Removal: October 13, 2022**
21  PROFESSIONAL LIABILITY
22  INSURANCE POLICY NO.            Filed Concurrently:
    B074021F3121, an unknown entity;   1. Declaration of Brandon S. Reif
23  and DOES 1-10 inclusive,           2. Declaration of Dominic Baldini
24                                     3. Declaration of Jacqueline Vinar
                Defendants.            4. [Proposed] Order
25

26

27

28
                                    1
    PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON DUTY TO DEFEND –
                            4:22-cv-06037-HSG

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff Emerson Equity LLC ("Plaintiff") files this Partial Motion for Summary Judgment ("Partial MSJ") On the Duty to Defend. The Motion is brought pursuant to FRCP 56 and Local Rule 7-2, among others, and is presented in Courtroom 2 on June 29, 2023, at 2:00pm of the above-entitled Court located at Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, CA 94612, District Judge Haywood S. Gilliam, Jr. presiding.

Plaintiff Emerson seeks an order finding:(a) Emerson paid all the premiums for Securities Broker/Dealer Professional Liability Insurance Policy No. B074021F312 (hereinafter, "the Policy"); (b) Emerson has a valid and enforceable Policy in place for its securities lines of business; (c) All the claims brought in connection with the sale of the GWG L Bonds arose during the Policy period; (d) Emerson timely tendered all the claims to the Defendants Forge Underwriters Limited, Volante International Limited, Certain Underwriters at Lloyd's London Subscribing to Securities Broker/Dealer Professional Liability Policy No. B074021F3121 (collectively, the "Defendants") in connection with the claims stemming from the sale of the GWG L Bonds; (d) No exclusions or endorsements prevent Insurer from having a duty to defend; (e) The alleged and known facts reveal a possibility that the claims may be covered by the Policy, while the Defendants fail to establish the absence of coverage; (f) Because there exists a potential for coverage, the Defendants owe a duty to defend the claims brought pursuant to the Policy in connection with the sale of the GWG L Bonds; and (g) According to the terms of the Policy and the Defendants' interrelating the claims, Emerson pays a single $250,000 retention for defense costs for all the "Claims."  The Court should issue an order that: Emerson's Motion for Partial Summary Judgment on the Duty to Defend is granted; and Emerson is entitled to judgment on the duty to defend the claims.

1
2
3

    Plaintiff met and conferred with Defendants by email at 5:33 p.m. on May 4, 2023, and by telephone call at 7:45 a.m. on May 5, 2023, with follow-up meet/confer communications thereafter.

4
5
6
7
8

    This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Brandon S. Reif, Dominic Baldini, and Jacqueline Vinar, and the exhibits attached thereto, all papers and pleadings on file in this action, and upon such further evidence and argument as may be presented to the Court in connection with this Application.

9
10

Dated: May 22, 2023                    **REIF LAW GROUP, P.C.**

11
12
13

                                       *Brandon S. Reif*
                                       _____
                                       Brandon S. Reif
                                       Marc S. Ehrlich

14
15

                                       Attorneys for Plaintiff Emerson Equity, LLC

16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON DUTY TO DEFEND –
4:22-cv-06037-HSG

1

TABLE OF CONTENTS

2  I.      REQUESTED RELIF ……………………………………………….9

3  II.     SUMMARY OF ARGUMENT ..................................................... 10

4  III.    FACTUAL BACKGROUND ...................................................... 11

5          A.    The Parties ............................................................... 11

6          B.    The Policy.................................................................. 12

7          C.    Emerson Paid All Premiums, Has a Valid Policy and Timely Tendered ..... 14

8          D.    GWG's Unexpected Trouble.......................................... 15

9          E.    The Arbitrations ....................................................... 15

10         F.    Insurer's Untimely and Bad Faith Denial After An Inadequate Investigation

11               .............................................................................. 16

12         G.    Insurer's Wrongful Denial Is Premised on a Totally Erroneous

13               Reading of the Policy Language .................................. 18

14 IV.     LEGAL ARGUMENT ............................................................... 20

15         A.    Fed.R.Civ. Pro. 56 Standards for Partial Summary Judgment on the

16               Duty of Defense.......................................................... 20

17         B.    A Duty to Defend Arises If, Based on the Allegations, and Extrinsic

18               Information, There is a Merely a Potential for coverage .............. 21

19         C.    The Policy Terms are Straightforward and As Such, Mandate that

20               Coverage Exists for All "Covered" Claims ................... 23

21         D.    The Insurer's Reliance on Policy Exclusions and Endorsements are

22               Misplaced and No Policy Provision Precludes a Duty to Defend ............... 24

23               1.    The Endorsement & Exclusionary Clauses Do Not Defeat

24                     Coverage ........................................................ 24

25               2.    All of Insurer's Arguments are Factually or Legally Unsound.............. 25

26                     a.  Endorsement No. 2 – Erroneous Assumptions ............... 25

27                     b.  Endorsement No. 7's Doctrine of Interrelated Wrongs Does Not

28

4

     Preclude a Duty to Defend ............................................................25

    c. Endorsement No.  8's Defense of Prior Wrongful Acts Does Not

     Apply ..........................................................................................27

    d. Endorsement No. 9 - GWG L Bonds Not Troubled Investment ....29

    e. No Loss of Depreciation Exclusion ................................................30

V.  CONCLUSION .........................................................................................30

PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON DUTY TO DEFEND –
4:22-cv-06037-HSG

1

## TABLE OF AUTHORITIES

2 <u>FEDERAL CASES</u>

3  *Brown v. Amer. Int'l Group, Inc.*,

4    339 F.Supp.2d 336 (D. Mass. 2004) ...............................................................25

5  *Endurance Am. Specialty Ins. Co. v. WFP Secs. Corp.*, 11cv2611,

6    2012 U.S. Dist. LEXIS 153864 (S.D. Cal. Sept. 28, 2012) ...........................10, 29

7  *Mancha Dev. Co., LLC v. Houston Cas. Co.*Case No. SACV 19-831 JVS (KESx),

8    2019 U.S. Dist. Lexis 214545 (C.D. Cal. Jul. 9, 2019)........................................27

9  *Pension Trust Fund v. Fed. Ins. Co.*,

10    307 F.3d 944 (9th Cir. 2002) .............................................................................22

11  *PMI Mortgage, Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*,

12    394 F.3d 761(9th Cir. 2005) ..............................................................................22

13  *Travelers Ind. Co. v. Insurance Co. of North America*,

14    886 F.Supp.1520 (S.D. Cal. 1995) ....................................................................22

15

16 <u>STATE CASES</u>

17  *AIU Ins. Co. v. Superior Ct.*,

18    51 Cal.3d 807 (1990) ........................................................................................26

19  *Am. Bldg. Maint., Inc. v. Fireman's Fund Ins. Co.*,

20    137 Cal.App.4th 627 (2006) ..............................................................................22

21  *Amato v. Mercury Cas. Co.*,

22    18 Cal.App.4th 1784 (1993) ..............................................................................21

23  *American States Ins. Co. v. Travelers Property Casualty Co. of America*,

24    223 Cal.App.4th 495 (2014) ..............................................................................20

25  *Atlantic Mut. Ins. Co. v. J. Lamb*,

26    100 Cal.App.4th 1017 (2002) ............................................................................22

27

28

PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON DUTY TO DEFEND –
4:22-cv-06037-HSG

*Barnett v. Fireman's Fund Ins. Co.,*
        90 Cal.App.4th 500 (2001) ...........................................................22

*Buss v. Superior Court,*
        16 Cal.4th 35 (1997) .............................................................22, 23

*Clarendon Am. Ins. Co. v. N. Am. Capacity Ins. Co.,*
        186 Cal.App.4th 556 (2010) ..........................................................26

*CNA Cas. of Calif. v. Seaboard Sur. Co.,*
        176 Cal.App.3d 598 (1986) ...........................................................20

*E.M.M.I. Inc. v. Zurich Am. Ins. Co.,*
        32 Cal.4th 465 (2004) ................................................................22

*Gray v. Zurich Ins. Co.,*
        65 Cal.2d 263 (1996) .................................................................22

*Haynes v. Farmers Ins. Exchange,*
        32 Cal.4th 1198 (2004) ...............................................................24

*Horace Mann Ins. Co. v. Barbara B.,*
        4 Cal.4th 1076 (1993) ...................................................... 20, 21, 24

*MacKinnon v. Truck Ins. Exch.,*
        31 Cal.4th 635 (2003) ...................................................... 22, 24, 25

*Maryland Cas. Co. v. Nat'l Am. Ins. Co.,*
        48 Cal.App.4th 1822 (1996) ..........................................................21

*ML Direct, Inc. v. TIG Specialty Ins. Co.,*
        79 Cal.App.4th 137 (2000) ...........................................................22

*Montrose Chem. Corp. v. Superior Court,*
        6 Cal.4th 287 (Cal. 1993) ................................... 20, 21, 22, 23, 24, 28, 29

*Penn. General Ins. Co. v. American Safety Indemnity Co.,*
        185 Cal.App.4th 1515 (2010) .........................................................28

PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON DUTY TO DEFEND –
4:22-cv-06037-HSG

*Saylin v. Cal. Ins. Guar. Ass'n*,

    179 Cal.App.3d 256 (1986) .........................................................................22

*State Farm Mut. Auto. Ins. Co. v. Jacober*,

    10 Cal.3d 193 (1973) ...............................................................................24

*White v. Western Title Ins. Co.*,

    40 Cal.3d 870 (1985) ...............................................................................24


STATE STATUTES

Cal. Civ. Code § 1654 ...................................................................... 11, 23, 26

Cal. Code Regs., Title 10, § 2695.5 ...........................................................16, 17


OTHER AUTHORITIES

*Croskey, et al., California Practice Guide: Insurance Litigation*,

    ¶7:82.3 (The Rutter Group 2019) ..............................................................25

*Philip L. Bruner And Patrick J. O'Connor, Jr.*,

    *4A Bruner & O'Connor on Constr. Law* § 11:283 (2012)....................................27

PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON DUTY TO DEFEND –
4:22-cv-06037-HSG

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff Emerson Equity, LLC ("Emerson" or "Plaintiff") submits the following points and authorities in support of its Motion for Partial Summary Judgment on the Duty to Defend. Defendants Forge Underwriting Limited, Volante International Limited, Certain Underwriters at Lloyd's, London subscribing to Securities Broker/Dealer Professional Liability Insurance Policy No. B074021F3121 (collectively, the "Insurer" or "Defendant") owe a duty to defend Plaintiff's covered claims, filed as binding arbitrations before the Financial Industry Regulatory Authority ("FINRA"). As a matter of law, there is at least a potential for coverage under the Policy for the FINRA arbitration claims, thus triggering the Insurer's duty to defend.[1]

## I. **RELIEF REQUESTED**

Plaintiff Emerson seeks an order finding:(a) Emerson paid all the premiums for Securities Broker/Dealer Professional Liability Insurance Policy No. B074021F312 (hereinafter, "the Policy"); (b) Emerson has a valid and enforceable Policy in place for its securities lines of business; (c) All the claims brought in connection with the sale of the GWG L Bonds arose during the Policy period; (d) Emerson timely tendered all the claims to the Defendants Forge Underwriters Limited, Volante International Limited, Certain Underwriters at Lloyd's London Subscribing to Securities Broker/Dealer Professional Liability Policy No. B074021F3121 (collectively, the "Defendants") in connection with the claims stemming from the sale of the GWG L Bonds; (d) No exclusions or endorsements prevent Insurer from having a duty to defend; (e) The alleged and known facts reveal a possibility that the claims may be covered by the Policy, while the Defendants fail to establish the absence of coverage; (f) Because there exists a potential for coverage, the Defendants owe a duty to defend the claims brought pursuant to the Policy in connection with the sale of the GWG L Bonds; and (g)

---

[1] The instant motion seeks only a declaration that the claims are at least potentially covered under the Policy, and therefore, Insurer owes a duty to defend. Emerson anticipates seeking adjudication of the duty to indemnify later in the case and is confident that the Court will find the

PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON DUTY TO DEFEND – 4:22-cv-06037-HSG

According to the terms of the Policy and the Defendants' interrelating the claims, Emerson pays a single $250,000 retention for defense costs for all the "Claims." The Court should issue an order that: Emerson's Motion for Partial Summary Judgment on the Duty to Defend is granted; and Emerson is entitled to judgment on the duty to defend the claims.

## II.   <u>SUMMARY OF ARGUMENT</u>

Insurer refused to provide a defense of covered claims by issuing letters of denial alleging that the claims were not covered under the Securities Broker/Dealer Professional Liability Insurance Policy No. B074021F3121 ("the Policy").

Emerson believes that this Court will find that the FINRA arbitration claims and other claims are covered under the Policy and that there is a possibility for coverage of the claims, while the Insurer failed to establish the absence of coverage. As such, the Insurer breached the duty to defend these claims and continues to do so.[2] Emerson is entitled to judgment on the duty to defend the claims.

Emerson's motion finds persuasive support in the analogous case of *Endurance Am. Specialty Ins. Co. v. WFP Secs. Corp.*, Case No. 11cv2611, 2012 U.S. Dist. LEXIS 153864 (S.D. Cal. Sept. 27, 2012).

The following facts cannot be disputed: Emerson paid all the premiums; Emerson has a valid and enforceable Policy in place for these lines of business; all the claims arose during the Policy period; Emerson timely tendered all the claims to the Insurer; and the Policy's Troubled Investment Exclusion in Endorsement No. 9 does not list GWG L Bonds. Therefore, the claims involving the GWG L Bonds do not, at least potentially, constitute an excluded "Loss" or an excluded "Claim." The Policy states that California law applies.

There is absolutely no term or exclusion in the Policy that would close all the potential for coverage, and nothing excuses the Insurer from its duty to defend all the

---

[2] FINRA arbitration claims are in fact covered under the Policy.

PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON DUTY TO DEFEND – 4:22-cv-06037-HSG

1  claims.

2       The Insurer heavily relies on Endorsement No. 8 ("No. 8") in the Policy, which

3  excludes coverage for "**Claims**" occurring before the retroactive date.  But not a single

4  claim would trigger No. 8's retroactive date exclusion since the Policy narrowly defines

5  a "Claim" as, *inter alia*, a "written demand for monetary relief" or the "filing of an

6  arbitration demand or statement of claim." Further, the Insurer cannot punitively

7  redefine No. 8 to exclude more than "Claims."[3]  Still further, No. 8 has been a term in

8  the Policy for two previous policy periods and, thus, the Insurer must be deemed: (a) the

9  drafter of the No. 8 clause (Cal. Civ. Code §1654); and (b) having ratified No. 8's

10  express statement to exclude "Claims" that offend the retroactive date.

11       The Insurer has also not issued a reservation of rights ("ROR"),[4] affording

12  Emerson the Insurer's requisite duty to defend the claims.  Emerson moves to secure its

13  contractually entitled defense under the Policy's $5 million coverage.

14  **III.   FACTUAL BACKGROUND**

15         **A. The Parties**

16       Emerson is a financial services company dually licensed as a FINRA broker-

17  dealer and as a SEC-registered investment advisory firm.  *See* Baldini Dec., ¶4.

18  Emerson's Chief Executive Officer is Dominic Baldini.  *Id.* ¶1. The Insurer is the

19  collective of insurance companies Forge Underwriting Limited, Volante International

20  Limited, Certain Underwriters at Lloyd's, London subscribing to Securities

21  Broker/Dealer Professional Liability Insurance Policy No. B074021F3121.  *Id.* ¶5.

22  Alliant negotiated Emerson's Policy with the Insurer for the last three (3) years, which

23  is important since the Insurer's Policy for the last three years of insurance coverage

24  included near-verbatim terms regarding the relevant terms at issue.

25

26  _____

   [3] The Insurer's denial letter dated June 8, 2022 purposefully misstates No. 8 as excluding "Wrongful

27  Acts", which has a wholly different definition in the Policy.

   [4]  The ROR letter dated May 6, 2022, was superseded by denials dated June 8, 2022, July 15, 2022 and February

28  13, 2023. (See Declaration of Dominic Baldini ("Baldini Dec."), Exhibit ("Ex.") D.

**B.**     **The Policy**

The Policy titled "Securities Broker/Dealer Professional Liability Insurance" was issued to Emerson bearing "Unique Market Reference: B074021F3121" for the period of October 25, 2021 to October 25, 2022 (the "policy period"). Baldini Dec., ¶6 and Ex. A. The Policy has a $5 million limit of liability in the aggregate. *Id.* There is no "per claim" limit in the Policy, except for the inapplicable Endorsement No. 8 ("No. 8") pertaining to retroactive claims. Baldini Dec., ¶7.

The Policy was purchased to provide comprehensive professional liability insurance coverage for Emerson's lines of business, including the GWG L Bonds at issue in the FINRA arbitrations. Baldini Dec., ¶7.

The Policy's insuring agreement applies coverage as follows in pertinent part:

> **"BROKER/DEALER PROFESSIONAL LIABILITY INSURANCE (INCLUDING FAILURE TO SUPERVISE)**
>
> "This policy shall pay on behalf of the **Broker/Dealer Loss** arising from a **Claim** first made against the **Broker/Dealer** during the **Policy Period** or the Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy for any actual or alleged **Wrongful Act** committed by the **Broker/Dealer**"
>
> \*\*\*\*\*\*\*\*\*\*\*\*
>
> **"REGISTERED REPRESENTATIVE PROFESSIONAL LIABILITY INSURANCE**
>
> "This policy shall pay on behalf of a **Registered Representative Loss** arising from a **Claim** first made against the **Registered Representative** during the **Policy Period** or the Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy for any actual or alleged **Wrongful Act** committed by the **Registered Representative** in the rendering or failure to render **Professional Services** on behalf of the **Broker/Dealer**."

Baldini Dec., ¶¶6-7, Ex. A.

Since the nexus of the arbitration claims arises from the sales of GWG L Bonds – publicly-issued securities approved by Emerson for sale to its customers (Baldini Dec., ¶36) it is clear that the Policy covers the arbitration claims.

The Policy defines some Policy terms, including the following:

> "(a) **"Approved Activity"** means a service or activity performed by the **Registered Representative** on behalf of the **Broker/Dealer** which:
> (1) has been approved in writing in advance of such service or activity by the **Broker/Dealer** to be performed by the **Registered Representative**, and is
> (2) in connection with the purchase or sale of a specific security, annuity or insurance product which has been approved by the **Broker/Dealer** to be transacted through the **Registered Representative**, and for which
> (3) the **Registered Representative** has obtained all licenses required by the **Broker/Dealer** or applicable law or regulation."
>
> *******
>
> "(c) **"Claim"** means the following brought by an **Insured's** customer or client in such capacity:
> (1) a written demand for monetary relief; or
> (2) a civil or arbitration proceeding for monetary or non-monetary relief which is commenced by:
> (i) service of a complaint or similar pleading; or
> (ii) receipt or filing of an arbitration demand or statement of claim.

Baldini Dec., ¶6, Ex. A. As such, Emerson's customers filing Statement of Claims ("SOCs") against Emerson are Claims that should be covered under the Policy.  Baldini Dec., ¶6, Ex. A.

Also defined within the Policy:

> "(h) **"Interrelated Wrongful Act(s)"** means **Wrongful Acts** which are the same, related or continuous, or **Wrongful Act**s which arise from the same, related or common nexus of facts regardless of

whether such **Claims** involve the same or different claimants, **Insureds** or legal causes of action. Further, and without limiting the aforementioned, the following **Claims** shall automatically be deemed to allege **Interrelated Wrongful Acts**:

> 1. **Claims** in connection with securities of any entity (or affiliated entities) which become(s) the subject of any bankruptcy, insolvency, receivership, liquidation or reorganization proceeding, or
> 2. **Claims** in connection with securities purchased in connection with an offering (or series of offerings) of securities issued by the same entity or affiliated"

******** 

"(j) "**Loss**" means damages, judgments, settlements and **Defense Costs.**"

Baldini Dec., ¶6, Ex. A.  Emerson incurred a "loss" every time a customer filed a SOC against it in connection with the GWG Bonds.

Also defined:

> "(o) "**Wrongful Act**" means any negligent act, error or omission by the **Broker/Dealer**, any director, officer, partner or employee thereof, or by any **Registered Representative** thereof and solely in their respective capacities as such."

Baldini Dec., ¶6, Ex. A.

## C.     Emerson Paid All Premiums, Has a Valid Policy and Timely Tendered

Emerson paid the full annual Policy premiums and has a valid and binding Policy. Baldini Dec., ¶8, Ex. A.   Before the Insurer issued the Policy, it was fully informed, through the application and underwriting process, that Plaintiff was a full-service securities broker-dealer and registered investment advisory firm that sold many financial and securities products.  Baldini Dec., ¶10.  Emerson disclosed that it offered managing broker-dealer services for an investment sponsor, GWG Holdings, Inc. ("GWG"), including the GWG L Bonds, among other securities products. Baldini Dec., ¶10.  Emerson's managing broker-dealer line of business was, and still is, also disclosed

on its website.  Baldini Dec., ¶11.  Emerson's managing broker-dealer line of business services was correctly included for insurance coverage within the Policy. Baldini Dec., ¶12.  The Policy generally and broadly provided comprehensive coverage for Plaintiff's full-service securities broker-dealer.

### D. <u>GWG's Unexpected Trouble</u>

In December 2021, GWG Holdings, Inc.'s independent auditor unexpectedly declined to stand for reappointment. Baldini Dec., ¶13. GWG Holdings, Inc., which issued the GWG L Bonds, could not timely file its 10K financial statements for the year ending 2021. Baldini Dec., ¶13.  It had to therefore suspend its capital raising efforts (*Id*.), which caused a cash flow problem causing it to miss its first interest and principal payment in January 2022. Baldini Dec., ¶14.

The ***first claims*** were made on February 16, 2022, served on Plaintiff on or around February 18, 2022 and reported to the Insurer on February 22, 2022.  Baldini Dec., ¶15 Exh. B and ¶26.

GWG filed for federal bankruptcy protection on April 20, 2022.  Baldini Dec., ¶16, Ex. C.   Emerson was unaware of any prior bankruptcy filing by GWG.  Baldini Dec., ¶17.  Most importantly, Emerson tendered no **Claims** relative to GWG L Bonds before the Policy period. Baldini Dec., ¶33.  Even more importantly, Emerson tendered no Claims relative to GWG L Bonds before the October 25, 2019 retroactive date. *Id*.

### E. <u>The Arbitrations</u>

Since February 2022, Emerson has been served with SOCs substantially exceeding policy limits. Baldini Dec., ¶18.

Each arbitration filing will, conservatively, incur an estimated $150,000 in attorneys' fees and $40,000 in costs and forum fees. Baldini Dec., ¶19.  Emerson reasonably estimates that many of the arbitrations will settle or go to evidentiary hearing where a binding arbitration award will result, all of which will occur before the trial in this action and before the GWG bankruptcy petition is resolved. Baldini Dec., ¶19.

PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON DUTY TO DEFEND – 4:22-cv-06037-HSG

All the **Claims** were filed in 2022 and continue to be filed into 2023. Baldini Dec., ¶20.  To date, Emerson has paid a substantial amount of money to defend and settle the customer SOCs to date and the amount will continue to increase. Baldini Dec., ¶21.  Emerson has received absolutely no defense coverage or indemnity coverage from the Insurers for any claims, or arbitrations, which substantially exceed its policy limits. Baldini Dec., ¶21.

GWG Holdings, Inc., is a financial service company engaged in, *inter alia*, life insurance and related business.  Baldini Dec., ¶22. It is a publicly reporting company that filed periodic SEC filings including Form 8-Ks and Form 10-Qs.  Baldini Dec., ¶22. GWG L Bonds were publicly issued securities, and not private placement securities. Baldini Dec., ¶22.

Emerson, through its FINRA-licensed affiliated registered representatives, approved and facilitated the non-discretionary sales of the publicly-issued GWG L Bonds that are the subject of the SOCs.   Baldini Dec., ¶ 23.  GWG L Bonds were deemed an "approved for sale" investment to qualified Emerson customers. To date, all the Claims involved Emerson customers. Baldini Dec., ¶ 24.  GWG Holdings, Inc. had the exclusive right to accept or reject customers as investors in the GWG L Bonds, thereby becoming customers of GWG Holding, Inc. Baldini Dec., ¶ 25.

On February 22, 2022, Insurer was notified of all the SOCs.  Baldini Dec., ¶26. Emerson continues to timely report all the SOCs to Insurer. Baldini Dec., ¶26. All of the occurrences took place within the Policy Period. Baldini Dec., ¶18. Emerson had no Claims regarding GWG before the October 25, 2019 retroactive date. Baldini Dec., ¶40.

## F.  Insurer's Untimely and Bad Faith Denial After An Inadequate Investigation

Under California law, an insurance company which receives notice of a claim from an insured or claimant must furnish the insured with a complete response based on the facts as then known by the insurer.  *See* Cal. Code Regs., Title 10, § 2695.5(b).

Further, every insurer receiving notice of claim shall immediately, and no later than 15 calendar days, **must**: (1) acknowledge receipt of notice; *id.* at § 2695.5(e)(1); (2) provide the insured with any necessary forms, instructions and reasonable assistance; *id.* at § 2695.5(e)(2); and, (3) begin any necessary investigation. *Id.* at § 2695.5(e)(3).

On February 22, 2022, Emerson tendered the first SOC to Insurer for a coverage determination. Baldini Dec., ¶26.  Insurer failed to timely respond to Emerson's requests for coverage of the first SOC, making Emerson **wait more than 9 weeks** – and not the statutory 15 days – for an initial response.

As the SOCs continued to be filed against Emerson, Emerson continued to timely tender the SOCs to the Insurer as soon as they received each notification. Baldini Dec., ¶26. The Insurer failed to timely respond to any of Plaintiff's requests for coverage. Baldini Dec., ¶27.

On May 6, 2022, the Insurer, through outside counsel[5], issued a "Preliminary Coverage Discussion – Reservation of Rights" letter ("ROR Letter"). Baldini Dec., ¶28, Ex. D; Declaration of Jacqueline Vinar, Alliant Insurance Services, Inc. ("Alliant") Vice President, Senior Claims Attorney ("Vinar Dec."), ¶16. Such response was approximately 72 days from the Insured's initial notice of claim, or approximately 57 days late.

On June 8, 2022, Insurer, through the same counsel, issued an updated letter suddenly denying coverage for all "GWG L Bond Matters" entirely ("Denial Letter 1"). Baldini Dec., ¶29, Ex. E.

On or about July 15, 2022, the Insurer, through the same counsel, reissued the letter denying coverage in a section titled "Reaffirmation of Coverage Denial" for all "GWG L Bond Matters" entirely ("Denial Letter 2"). Baldini Dec., ¶32 and Ex. F.

On or about February 13, 2023, the Insurer, through the same counsel, reissued the letter denying coverage. Baldini Dec., ¶D at pages 18-21.

---

[5] The same counsel is defending the Insurers in this action: Stefan Dandelles, of the Kaufman Dolowich Voluck law firm.

### G.     Insurer's Wrongful Denial Is Premised on a Totally Erroneous Reading of the Policy Language

A reading of the Insurer's June 8, 2022 denial letter demonstrates that Insurer's counsel either does not understand the Policy language or pretends to not so understand. At page 5, counsel writes:

> At least three known Claimants contend Emerson/Barouti made unsuitable recommendations and misrepresentations with respect to investments in L Bonds prior to October 25, 2019: (1) Claimant Dinani (Adelpour & Dinani SOC) – August 2018; (2) Claimant Mirmohammadsadeghi (Ohanian, et al. SOC) – November 2018; and (3) Abouzar – April 2019. In addition, Claimant Imani alleges that he first met Barouti in 2016 and that Barouti recommended Imani purchase L Bonds after their first meeting. Other Claimants also allege they invested in L Bonds in 2019.

See Baldini Dec., ¶30 Ex. E at 8 (Denial Letter 1).  From there, Insurer's counsel concludes, without basis or explanation, that because all the claims are based on some wrongdoing by Emerson brokers, the claims are all Interrelated Wrongs and there is a complete denial of coverage for all SOCs.  The basis of the denial of coverage is erroneous and breaches the terms of the Policy since No. 8 is limited to **Claims**, ***not Wrongful Acts,*** that occurred prior to October 25, 2019. The Insurer, at the time the Denial Letter 1 was issued, was fully aware that Emerson had not tendered any **Claims** (relative to the GWG L Bonds or other securities products) prior to the October 25, 2019 retroactive date. Baldini Dec., ¶33.

The Insurer has not recanted the denial of coverage and has not defended any of the claims.  Baldini Dec., ¶34. The Insurer had not attempted to reach Emerson to perform a comprehensive and thorough investigation before Emerson was forced to file this lawsuit. Baldini Dec., ¶30.

Insurer summarily denied the covered Claims, ***without good cause***, after conducting a perfunctory, at best, investigation and erroneously concluding, among

PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON DUTY TO DEFEND – 4:22-cv-06037-HSG

other things, that the GWG L Bonds was a private placement, that the transactions involved capital raising, that the occurrence date was before October 25, 2019 and that the claims do not meet the definitions of Claims, Loss or Professional Services, among other erroneous defenses. Baldini Dec., ¶¶32-33, 35-37.

Because Emerson's managing broker-dealer line of business services was correctly included for insurance coverage within the policy, the SOCs are covered under the Policy.  Baldini Dec., ¶12.  The facts and circumstances that Defendants relied on to summarily deny coverage are erroneous. Baldini Dec., ¶35.  Insurers did not contact Emerson or its subordinates to investigate the events to reach correct findings. Baldini Dec., ¶32.

Even if Insurer was incapable of reaching a proper conclusion on its own, Alliant expressly challenged the Insurer's Denial Letter 1 (June 8, 2022) as erroneous on June 14, 2022.  Vinar Dec., ¶4, Ex. A; Baldini Dec., ¶44 and Ex. I.  Ms. Vinar explained the Insurer's misinterpretations of the Policy and urged a reconsideration of the denials. The Insurer, however, did not reconsider its denials and did not launch a thorough investigation either. Badlini Dec., ¶44.

It is notable that Ms. Viner fully explained that "the Insuring Agreement of the policy notes that the Policy will pay for a Loss against the Insured arising from a CLAIM during the policy period and reported in writing to the Insurer for any actual or alleged Wrongful Act committed by the Insured." *Id*.

She further explained:

> since the Insurer has interrelated all matters, the common theme has become the allegation regarding the misconduct of the Insured regarding unsuitable recommendations to invest in L Bonds and misrepresentations and omissions regarding same. You reference Endorsement 8 Professional Services Retroactive date with respect to specific professional services stating the Insurer shall not be liable in for Loss in connection with any CLAIM, including Interrelated Wrongful Acts, occurring before October 25, 2019. You note that as at least three of the claimants allege Wrongful Acts prior to the Retroactive Date of

PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON DUTY TO DEFEND – 4:22-cv-06037-HSG

Oct 25, 2019, and all claimants allege Interrelated Wrongful Acts, all matters are interrelated and no coverage is applicable.

**Your theory is based on an incorrect reading of the policy. There was no Claim made prior to October 25, 2019**. What we have here are claimants who are first now making a Claim alleging bad investment advice. The claimants, different investors, continually purchased the bonds. **The fact that there are claimants alleging now that they made investments prior to Oct 25, 2019 is irrelevant because there was never a Claim alleging wrongful acts arising out of these investments made previously.** The time frame of their investments is not what controls. **In order to activate the retro date and interrelate wrongful acts alleged in the current Claims there must have been a Claim with related facts in the past. That is simply not the case.**

**The purpose of the retroactive date is to exclude from coverage known claims at the time of the policy renewal. The Insured was not aware of any situation and no claims existed at that time. As such, you cannot take the position that the claims all interrelate back to the retro date when no claim for wrongful acts existed at such time.**

See Vinar Dec., ¶4, Ex. A (emphasis added).

As the broker who procured the Policy and handled the negotiations, Alliant's understanding and interpretation of the Policy must be given deference. Ms. Vinar's reasonable explanation was wholly ignored by the Insurers.

## IV.   **LEGAL ARGUMENT**

### A.   **Fed. R. Civ. Pro. 56 Standards for Partial Summary Judgment on the Duty of Defense**

California law holds that a professional liability insurer owes a broad duty to defend its insurer against claims that create a potential for indemnity.  *See American States Ins. Co. v. Travelers Property Casualty Co. of America*, 223 Cal.App.4th 495, 506 (2014); *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (1993); *CNA Cas. of Calif. v. Seaboard Sur. Co.*, 176 Cal.App.3d 598, 605 (1986).

In *Montrose Chem. Corp. v. Superior Court*, 6 Cal.4th 287 (Cal. 1993), the California Supreme Court explained the parties' respective burdens of proof with regard

to an insurer's duty to defend[1] as follows:

> To prevail, the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales…

*Id.* at 300.  This standard requires only "a bare 'potential' or 'possibility'.'(*Id.*)

In a later decision, the Ninth Circuit incorporated the *Montrose* holding, setting forth the definitive rule for deciding an insurer's duty to defend at the summary judgment stage:

> Once a prima facie showing is made that the underlying action fell within coverage provisions, an insurer may defeat a motion for summary judgment only by producing undisputed extrinsic evidence conclusively eliminating the potential for coverage under the policy.

*Maryland Cas. Co. v. Nat'l Am. Ins. Co.*, 48 Cal.App.4th 1822, 1832 (1996). "The existence of a disputed fact, determinative of coverage, establishes the duty to defend…" *Amato v. Mercury Cas*. Co., 18 Cal.App.4th 1784, 1790 (1993) (emphasis in original, *citing Horace Mann*, *supra,* Cal.4th at pp. 1081, 1085.).

**B.    A Duty to Defend Arises If, Based on the Allegations, and Extrinsic Information, There is a Merely a Potential for Coverage**

The Policy states that California law applies.   As explained above, under California law, a professional liability insurer owes a broad duty to defend to its insured against claims that can lead to a potential for indemnification.  *Horace Mann Ins. Co., supra,* 4 Cal.4th at 1081;  *Montrose Chem. Corp. , supra,* 6 Cal.4th at 295.

"The scope of the duty to defend does not depend on the labels given to the causes of action in the third party complaint; instead it rests on whether the alleged facts

21

or known extrinsic facts reveal a possibility that the claim may be covered by the policy." *Atlantic Mut. Ins. Co. v. J. Lamb,* 100 Cal.App.4th 1017, 1034 (2002). "The duty to defend arises when the facts alleged in the underlying complaint give rise to a potentially covered claim, regardless of the technical legal cause of action pleaded by the third party." *Barnett v. Fireman's Fund Ins. Co.,* 90 Cal.App.4th 500, 510 (2001).

In analyzing coverage claims, "California law instructs that . . . interpretive quandaries be resolved in favor of the insured and against the insurer. The Supreme Court has consistently held that insurance policies are to be 'interpreted broadly so as to afford the greatest possible protection to the insured.'" *PMI Mortgage, Ins. Co. v. Am. Int'l Specialty Lines Ins. Co*., 394 F.3d 761 765 (9th Cir. 2005) (*quoting MacKinnon v. Truck Ins. Exch*., 31 Cal.4th 635 (2003)). The insurer must defend any potentially covered claim, even if in fact it is groundless, false, or fraudulent. N. *Am. Bldg. Maint., Inc. v. Fireman's Fund Ins. Co*., 137 Cal.App.4th 627, 637 (2006) (*citing Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 273 (1996)). The duty to defend may exist even in instances "where the coverage is in doubt and ultimately does not develop." *Saylin v. Cal. Ins. Guar. Ass'n*, 179 Cal.App.3d 256, 263 (1986); *Montrose, supra*, 6 Cal.4th at 295.

The duty to defend arises immediately upon the insured's tender of a potentially covered claim. *Buss v. Superior Court,*16 Cal.4th 35, 46, 49 (1997). Accordingly, the duty to defend is determined by facts known to the insurer at the time of tender, not with the benefit of hindsight. *Montrose. supra,* 6 Cal.4th at 295. Thus, to avoid the duty to defend, an insurer must not only negate any possibility of a covered claim, it must do so only with evidence known to it at the time of its denial. *Pension Trust Fund v. Fed. Ins. Co.,* 307 F.3d 944, 949 (9th Cir. 2002); *Travelers Ind. Co. v. Insurance Co. of North America*, 886 F.Supp.1520, 1525 (S.D. Cal. 1995) ("California law is clear that the duty to defend is measured at the outset of the litigation, not by hindsight."); *accord Devin v. USAA,* 6 Cal.App.4th 1149, 1157 (1992). Moreover, if even a single allegation carries a potential of coverage, the insurer must mount and fund the defense of the entire action,

including claims for which there is clearly no potential for coverage. *Buss, supra,* at 48. "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose, supra,* at 300. This inquiry places a "heavy burden" on defendant insurers seeking to avoid the duty to defend. *Anthem Elect.,* 302 F.3d at 1056.

## C. The Policy Terms are Straightforward and As Such, Mandate that Coverage Exists for All "Covered" Claims

The Insurer's determination that no coverage exists under the Retroactive Date Endorsement is erroneous. There were no determinative facts that the occurrences were before October 25, 2019. Defendants' reliance on this endorsement to wholesale deny coverage for every independently filed SOC renders the Policy illusory.

GWG L Bonds missed its first interest and principal payment in January 2022. Baldini Dec., ¶14. The first claims were made on February 16, 2022, served on Plaintiff on or around February 18, 2022 and reported to the Insurer on February 22, 2022. Baldini Dec., ¶¶ 15, 26. There was no Claim reported before the retroactive date. Baldini Dec., ¶33.

Interrelation is not at issue since the Policy has no 'per claim' limit just the aggregate limit. Therefore, to trigger the duty to defend all the claims, Emerson is required by the Policy to pay a single $250,000 self-insured retention for full defense and indemnity up to the $5 million aggregate limit.

The Policy terms are generally straightforward here, although any ambiguity will be decided in Emerson's favor. Cal. *Civ. Code* § 1654. The Policy expressly states that coverage exists for all "covered" claims.

The Insurer cannot conclusively prove that the claims are not covered. Conversely, the evidence demonstrates that GWG L Bonds were a publicly-issued security sold by Emerson and its associated persons to the customers. There was **no "occurrence" before the retroactive date** nor at the time of the annual renewal since

the first notice of an "occurrence" was the bankruptcy petition in 2022.  All the arbitration filings began in 2022 after the independent auditor disclosure of December 2021. Baldini Dec., ¶15, 13.

Accordingly, there is at least a potential for coverage, and the Insurer must defend the entire actions. *Montrose Chem. Corp., supra,* 6 Cal.4th at 300;.  *Horace Mann Ins. Co, supra,* 4 Cal.4th at 1081.

**D.  The Insurer's Reliance on Policy Exclusions and Endorsements are Misplaced and No Policy Provision Precludes a Duty to Defend**

**1.  The Endorsement & Exclusionary Clauses Do Not Defeat Coverage**

Insurance coverage is "interpreted broadly so as to afford the greatest possible protection to the insured, [whereas]…exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 648 (2003) (citing *White v. Western Title Ins. Co*., 40 Cal.3d 870, 881 (1985)). An exclusionary clause "must be conspicuous, plain and clear." MacKinnon, 31 Cal. 4th at 648 (citing *State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal.3d 193, 201-202 (1973)).

As explicitly stated by the California Supreme Court:

> [A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again "any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect." [Citation.] Thus, "the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." [Citation.] The exclusionary clause "must be *conspicuous, plain and clear.*"

*E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 32 Cal.4th 465, 471 (2004).

The Insurer must establish that an exclusion is not ambiguous and precludes coverage. *See ML Direct, Inc. v. TIG Specialty Ins. Co*., 79 Cal.App.4th 137, 142 (2000).  Exclusion provisions must be "conspicuous, plain, and clear." *Haynes v.*

*Farmers Ins. Exchange*, 32 Cal.4th 1198, 1204 (2004). They are interpreted narrowly against the insurer. *See Mackinnon, supra*, 31 Cal.4th at 648. The insurer must demonstrate the claim is specifically excluded.  *Id.*

### 2.    All of Insurer's Arguments are Factually or Legally Unsound.

#### a.    Endorsement No. 2 – Erroneous Assumptions

Defendants denied coverage in reliance on the belief that the GWG L Bonds are private placements, subject to Policy Endorsement No. 2. They are not private placements but are publicly-issued securities. Baldini Dec., ¶36.  Defendants cannot prove otherwise.  Defendants also denied coverage in reliance on the erroneous belief that Emerson was raising capital as an investment bank. Baldini Dec., ¶¶36-37. It was not.  Emerson was a fully disclosed managing broker-dealer that facilitated securities transactions consistent with its fully disclosed business lines. Baldini Dec., ¶10. Defendants cannot prove otherwise. Furthermore, the Insurer did not conduct a thorough investigation before reaching these erroneous findings. Baldini Dec., ¶¶30-31, 35. Nor have the Insurers recanted or withdrawn their erroneous findings. Baldini Dec., ¶34.

#### b.    Endorsement No. 7's Doctrine of Interrelated Wrongs Does Not Preclude a Duty to Defend

In California, "[t]he burden is on the insurer to show that wrongful acts during the policy period are 'related to' prior wrongful acts," and an interrelated acts exclusion is "narrowly interpreted to preserve coverage wherever possible." *Croskey, et al., California Practice Guide: Insurance Litigation*, ¶7:82.3 (The Rutter Group 2019) (*citing Brown v. Amer. Int'l Group, Inc*., 339 F.Supp.2d 336, 346 (D. Mass. 2004).

The Policy's definition of interrelated claims may tend to support interrelating the claims because of the GWG L Bonds' bankruptcy filing in 2022.   But even if the claims are deemed interrelated based on the bankruptcy filing, it does not serve to defeat the Insurer's duty to defend the **Claims**.

There is one aggregate limit of $5 million.  Emerson is entitled to rely on the $5

million aggregate limit for defense (and indemnity) because the Policy does not contain a per claim limit.

The Insurer has argued for a lower limit based on Endorsement No. 7, which reads: **"USD 4,000,000 each Claim and in the aggregate in excess of USD 1,000,000 each Claim and in the aggregate."** The Insurer's ROR Letter attempts to change the express language in Endorsement No. 7 as intended to mean that the aggregate limit of liability is $1,000,000. Baldini Dec., Ex. D.

The Insurer's argument is not supported by the Policy. Any ambiguity in Endorsement No. 7 must be interpreted against the Insurer.  *See, e.g., AIU Ins. Co. v. Superior Ct.,* 51 Cal.3d 807, 822 (1990) ( If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist. (*Id.*, Cal. Civ. Code § 1654.) In the insurance context, we generally resolve ambiguities in favor of coverage. (citations omitted); *Clarendon Am. Ins. Co. v. N. Am. Capacity Ins. Co.,* 186 Cal.App.4th 556, 567 (2010) ("[a]ny ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations.")

Further, when the claims are interrelated, it is logical from the plain reading of the Policy that one $250,000 retention applies since the Insurer is treating the claims as interrelated to one claim. The Insurer should not be heard to argue that Endorsement No. 7 implies that four $250,000 retentions could apply because the language does not support it. Any argument advanced by the Insurer to the contrary must be interpreted against the Insurer and not defeat the Insured's reasonable expectation to pay a single $250,000 retention in exchange for the full $5 million in coverage.  *Clarendon Am. Ins. Co., supra,* 186 Cal.App.4th at 567.

In any event, even if there is interrelation of claims, no claim falls prey to the retroactivity exclusion and, as such, interrelationship has no effect whatsoever on Insured's duty to defend.

c.      **Endorsement No.  8's Defense of Prior Wrongful Acts**
**Does Not Apply**

The Policy's retroactive date stated is October 25, 2019. *See Mancha Dev. Co.,*
*LLC v. Houston Cas. Co*., Case No. SACV 19-831 JVS (KESx), 2019 U.S. Dist. Lexis
214545, at *17 (C.D. Cal. Jul. 9, 2019).  A retroactive date limits coverage to a specific
date defined in the contract. *Philip L. Bruner And Patrick J. O'Connor, Jr., 4A Bruner*
*& O'Connor on Constr*. Law § 11:283 (2012). This prevents coverage for claims that
occurred before the retroactive date, even if they are brought during the coverage
period. *Id.*

"Professional Services Retroactive Date(s) Endorsement." Endorsement No. 8
reads in relevant part:

> It is hereby understood and agreed that, in connection with or
> in any way involving the following Professional Services, the
> Insurer shall not be liable to make payment for Loss in
> connection with any Claim, including any Interrelated
> Wrongful Act(s), occurring prior to 25th October 2019.

As discussed above, "Loss" is defined as: ""(j) "damages, judgments, settlements and
**Defense Costs**."  Emerson tendered the first SOC to Insurer for a coverage
determination on February 22, 2022. Baldini Dec., ¶¶26.

The issue as to whether there are retroactive claims precluding coverage turns on
the occurrence period policy. The Insurer claimed that several customers alleged
wrongful acts prior to October 25, 2019 and that GWG "already transitioned" away
from investing in life settlements before the retroactive date. The Insurer's argument is
unprovable and is nothing more than inadmissible, irrelevant speculation.

Endorsement No. 8 does not suddenly arise in the Policy at issue here.  No. 8 has
been in the prior two Policies bound by Insurer to Emerson.  Baldini Dec., ¶42 and Exs.
A, G and H. The Insurer has ratified the language in No. 8.  Insurer cannot now
suddenly claim that the Policy is to be interpreted to replace the term **Claims** with the

27

term **Wrongful Acts** in a way that changes the coverage terms.  It was not the

negotiation or intent of No. 8. Furthermore, it was Emerson's belief and intent that No.

8 was a retroactive date intended to exclude ***Claims*** made before October 25, 2019.

Baldini Dec., ¶40. Emerson never believed and was never on notice that the Insurer

could deny a Loss in connection with any Claim that occurred within the policy period

by relying on No. 8. Baldini Dec., ¶41. Emerson's interpretation is reasonable and

consistent with the Policy terms. The *post hoc* attempt by the Insurer to create an

ambiguity must be interpreted against it.

Evidence that "merely placed in dispute whether [the insured's] actions would

eventually be determined . . . to fall within one or more of the exclusions contained in

the policies is insufficient to defeat the insured's right to summary judgment." *Anthem*

*Elect., Inc. v. Pacific Employers Ins. Co*. 302 F.3d 1049, 1060 (9th Cir. 2002) (*quoting*

*Montrose*, 6 Cal.4th at 304, emphasis added.)

The clear language of No. 8 contemplates Insurer not having to pay out for a **Loss**

occurring prior to the Retroactive Date of October 25, 2019. GWG filed for bankruptcy

protection on April 20, 2022.  Baldini Dec., ¶16.  The sum of all the evidence

indisputably shows that the "occurrence" was not before December 2021. The date

when GWG's independent auditor unexpectedly declined to stand for reappointment

was December 2021. Baldini Dec., ¶13.  There was no 'occurrence' before the

retroactive date.

Because the term "occurrence" in connection with the retroactive date in the

Policy is left undefined, it must receive an ordinary and plain meaning in the broadest

manner in favor of coverage.  Courts have repeatedly confronted insurance policies with

the term occurrence and have determined that the "…time of occurrence of an accident

within the meaning of an insurance policy is the time the complaining party was

damaged, not the time the wrongful act was committed*." Penn. General Ins. Co. v.*

*American Safety Indemnity Co*., 185 Cal.App.4th 1515, 1526 (2010). The term

occurrence is further explained as "…when the damage was inflicted, not on when the casual acts were committed…" *Id.* at 1526.

The ordinary and plain meaning is arguably when the complaining party was damaged.  If the term "occurrence" is considered ambiguous, the ambiguity must be construed against the Insurer and most broadly in favor of coverage. *Montrose, supra*, 6 Cal.4th at 299.  Exclusions and limitations on coverage must be narrowly construed.

No colorable argument can be made that the 'occurrence' happened before the retroactive date.  An analogous case can be found at *Endurance Am. Specialty Ins. Co. v. WFP Secs. Corp.*, Case No. 11cv2611, 2012 U.S. Dist. LEXIS 153864, *7 (S.D. Cal. Sept. 27, 2012), where the federal court rejected the insurer's retroactive date theory finding that the insured alleges facts, if true, that demonstrate that the insurer withheld benefits due under the policy and the failure to pay the benefits was unreasonable); *(id.)* (court found that insurer did not demonstrate that the retroactive date exclusion applies to preclude coverage).

Endurance is a persuasive ruling because it involved securities transactions and a similarly worded insurance policy, FINRA arbitrations and the denial of coverage, all analyzed under California law by a California federal court.  Significantly, the court found that the insured demonstrated a potential for coverage while the insurer failed to establish the absence of coverage such that the insured was entitled to judgment on their duty to defend claim.

Here, the claims' occurrence, under any reasonable definition, was after the retroactive date.

### d.   Endorsement No. 9 - GWG L Bonds Not Troubled Investment

GWG L Bonds is not an excluded "Loss" or "Claim" in the Policy's Troubled Investment Exclusion in Endorsement No. 9.  This omission strengthens Emerson's coverage position because *if* GWG L Bonds had been deemed a troubled investment as

of October 25, 2021, the Insurer would have listed it in Endorsement No. 9.

### e.  No Loss of Depreciation Exclusion

The Insurer next reserves its rights under the loss of depreciation exclusion. The Policy term, at paragraph 5(y), addresses the depreciation issue which are limited to situations "to which the Insured has expressly or implicitly made a guarantee, representation or warranty as to the performance of such investments". This exclusion is inapplicable.   The Insurer cannot demonstrate that Emerson made any guarantee or warranties.

## V.     CONCLUSION

For all the foregoing reasons, Emerson respectfully requests that this Court: (a) grant its motion for partial summary judgment finding that the FINRA arbitration claims are covered under the Policy and that the Insurer breached the duty to defend the claims; and (b) enter judgment on the duty to defend the claims in favor of Emerson on its partial summary judgment motion.

**REIF LAW GROUP, P.C.**

Dated:  May 22, 2023          By:   *Brandon S. Reif*
                                                Brandon S. Reif
                                                Marc Ehrlich

                                                Attorneys for Plaintiff
                                                EMERSON EQUITY, LLC