Brandon S. Reif (SBN 214706)
Marc S. Ehrlich (SBN 198112)
**REIF LAW GROUP, P.C.**
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: 310.494.6500
Email: docket@reiflawgroup.com; breif@reiflawgroup.com
mehrlich@reiflawgroup.com

Attorneys for Plaintiff
EMERSON EQUITY, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| EMERSON EQUITY, LLC, a California limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> FORGE UNDERWRITING LIMITED, an unknown entity; VOLANTE INTERNATIONAL LIMITED, an unknown entity; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO SECURITIES BROKER/DEALER PROFESSIONAL LIABILITY INSURANCE POLICY NO. B074021F3121, an unknown entity; and DOES 1-10 inclusive, <br><br> Defendants. | Case No. 4:22-cv-06037-HSG <br><br> **DECLARATION OF DOMINIC BALDINI IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DUTY TO DEFEND** <br><br> Judge: Hon. Haywood S. Gilliam, Jr. <br> Dept.: Courtroom 2, Oakland Courthouse <br><br> Complaint Filed: September 12, 2022 <br> (San Mateo County Superior Court) <br> Complaint Served: September 15, 2022 <br> Notice of Removal: October 13, 2022 |

I, DOMINIC BALDINI, declare:

1. I am the Chief Executive Officer ("CEO") for Plaintiff Emerson Equity, LLC ("Emerson" or "Plaintiff"). I submit this declaration in support of Plaintiff's Motion for Summary Adjudication. I declare that the following facts are true and correct, and if called as a witness, I would competently testify to the matters that are within my personal knowledge.

2. I was sworn in as a California-licensed attorney in 1993 (SBN 163475). I practiced law before going into the securities business and I intermittently practiced law while in the securities business. I maintained an active status with the Bar from 1993 to 2003, then I went inactive to pursue a career in the securities business, and I activated my Bar membership from September 5, 2007 to January 30, 2008 before going inactive again.

3. I obtained my first FINRA license in 1998. Over the last estimated 23 years, I earned many FINRA licenses including Principal/Supervisory licenses. I am licensed to sell securities as a FINRA associated person in many states, California included, and I am licensed as an investment advisor representative in several states, California included. I founded Emerson in 2004 and I have been its CEO since its foundation to the present.

4. Emerson is a financial services company dually licensed as a FINRA broker-dealer and as a SEC-registered investment advisory firm.

5. The Insurer is the collective of insurance companies Forge Underwriting Limited, Volante International Limited, Certain Underwriters at Lloyd's, London subscribing to Securities Broker/Dealer Professional Liability Insurance Policy No. B074021F3121 (the "Insurers").

6. A true and correct copy of The Policy at issue, titled "Securities Broker/Dealer Professional Liability Insurance" issued to Emerson bearing "Unique Market Reference: B074021F3121" (the "Policy") is attached hereto as Exhibit A. The Policy states that it provides coverage for the time period of October 25, 2021 to October

1

DECLARATION OF BALDINI ISO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DUTY TO DEFEND – 4:22-cv-06037-HSG

DocuSign Envelope ID: 1CC884F9-E292-46F3-8821-989CAC8B533F

25, 2022 (the "policy period"). Per the Policy's explicit terms, the Policy has a $5 million limit of liability in the aggregate.

7. The Policy has no "per claim" limit, except for the Endorsement No. 8 ("No. 8") pertaining to retroactive claims, which does not apply here. I purchased the Policy for Emerson to provide comprehensive professional liability insurance coverage for our lines of business, including the GWG L Bonds at issue in the FINRA arbitrations for which I seek coverage from the Insurers.

8. Emerson has paid all the premium payments in full, and I believe that Emerson has a valid and binding Policy.

9. Before the Insurer issued the Policy, I fully, truthfully and accurately completed the application. Before the Insurer issued the Policy, I fully, truthfully and accurately answered all the questions and inquiries during the Insurers' due diligence underwriting process and I directed my insurance brokers at Alliant Insurance Services, Inc. ("Alliant") to fully cooperate with the Insurer's application and underwriting process.

10. I disclosed to the Insurers that Emerson is a full-service securities broker-dealer and registered investment advisory firm that sells many financial and securities products. I disclosed to the Insurers that Emerson offers managing broker-dealer services. The managing broker-dealer services included investment sponsor, GWG Holdings, Inc., among other securities products. I also disclosed, as requested by the Insurers, a full list of Emerson's offerings. My disclosure list included the GWG L Bonds offered by GWG Holdings, Inc.

11. Emerson's managing broker-dealer line of business services was and still is disclosed on Emerson's public website.

12. Emerson's managing broker-dealer line of business services was correctly included for insurance coverage within the Policy. I absolutely ***never*** would have purchased this Policy, with these premium rates, if Emerson's lines of business to sell

2

DECLARATION OF BALDINI ISO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DUTY TO DEFEND – 4:22-cv-06037-HSG

securities products, including the GWG L Bonds, were excluded, disclaimed or otherwise had limited coverage in the Policy. I understood when I purchased the Policy for Emerson that if the Insurers insisted that certain securities products would have no coverage, or limited coverage, and they were specifically itemized in the Troubled Investment Endorsement. The GWG L Bonds was not itemized on the Troubled Investment Endorsement.

13. GWG's financial difficulties were first disclosed to me, and my subordinates at Emerson, *after* the Policy had been issued. Specifically, in January 2022, I learned for the first time that GWG Holdings, Inc.'s independent auditor declined to stand for reappointment to complete the 2021 audit. This resulted in GWG Holdings Inc. having to suspend its capital raising efforts in January 2022 because they would not be able to timely file its 10K for the year end 2021.

14. As a result of the suspension, GWG L Bonds missed its first interest and principal payment in January 2022. I had absolutely no knowledge of a GWG financial difficulty before January 2022.

15. The very first Financial Industry Regulation Authority ("FINRA") customer Statement of Claims was served on Emerson on or about February 16, 2022. A true and correct copy of the first Statement of Claim (redacted) ("SOC") is attached hereto as Exhibit B.

16. GWG filed for federal bankruptcy protection on April 20, 2022. A true and correct copy of GWG's bankruptcy petition dated April 20, 2022 is attached hereto as Exhibit C.

17. I am unaware of any prior GWG Holdings, Inc. bankruptcy filing.

18. Since February 2022, Emerson has been served with claims, and arbitrations substantially exceeding our policy limits, something that the Defendant is well aware of, including the number and the amounts of claims being made. All of the occurrences took place within the Policy Period.

19. I have been informed that each arbitration filing will, conservatively, incur $150,000 in attorneys' fees and $40,000 in costs and forum fees. I estimate that many of the arbitrations will settle or go to evidentiary hearing where a binding arbitration award will result, all of which will occur before the trial in this action and before the GWG bankruptcy petition is resolved.

20. All of the Statement of Claims ("SOCs") were filed in 2022 and continue to be filed into 2023.

21. To date, Emerson has paid a substantial amount of money to defend and settle the customer SOCs to date. This amount will only continue to increase. Emerson has received absolutely no defense coverage or indemnity coverage from the Insurers for any claims, or arbitrations, which substantially exceed our policy limits.

22. GWG Holdings, Inc., is a financial service company engaged in, *inter alia*, life insurance and related business. It is a publicly reporting company that filed periodic SEC filings including Form 8-Ks and Form 10-Qs. GWG L Bonds were publicly registered securities, and not private placement securities.

23. Emerson, through its FINRA-licensed affiliated registered representatives, approved and facilitated the non-discretionary sales of the publicly-issued GWG L Bonds.

24. GWG L Bonds were approved for sale investment to qualified Emerson customer. To date, all of the claims filed against Emerson involve Emerson customers.

25. GWG Holdings, Inc. had the exclusive right to accept or reject customers as investors in the GWG L Bonds, thereby becoming customers of GWG Holding, Inc.

26. On February 22, 2022, I caused Emerson to tender the first SOC to the Insurers for coverage under the Policy. As the SOCs continue to be filed against Emerson, I continue to cause the SOCs to be timely tendered to the Insurer.

27. The Insurer failed to timely respond to any of Plaintiff's requests for coverage.

DocuSign Envelope ID: 1CC884F9-E292-46E3-8821-989CAC8B533F

28. On May 6, 2022, the Insurer, through outside counsel, *for the first time*, issued a "Preliminary Coverage Discussion – Reservation of Rights" letter ("ROR Letter"). A true and correct copy of that ROR Letter dated May 6, 2022, plus the rest of the three denial letters, is attached hereto as Exhibit D.

29. On June 8, 2022, Insurer, through the same counsel, issued an updated letter suddenly denying coverage for all "GWG L Bond Matters" entirely ("Denial Letter 1"). A true and correct copy of Denial Letter 1 dated May 8, 2022 is attached hereto as Exhibit E.

30. I was not examined, audited or interviewed by the Insurers or their counsel between the February 22, 2022 tender and the May 8, 2022 Denial Letter 1. No one working for Emerson under my direction was asked to be examined, audited or interviewed by the Insurers or their counsel between the February 22, 2022 tender and the May 8, 2022 Denial Letter 1.

31. I found it suspicious that the Insurers did not contact me or my subordinates to investigate the events between the tender date and the Denial Letter 1 transmission date in assist the Insurers reach correct findings.

32. On about July 15, 2022, the Insurer, through the same counsel, reissued the letter denying coverage in a section titled "Reaffirmation of Coverage Denial" for all "GWG L Bond Matters" entirely ("Denial Letter 2"). A true and correct copy of Denial Letter 2 dated July 15, 2022 is attached hereto as Exhibit F. Still, the Insurers did not contact me or my subordinates to investigate the events to reach correct findings.

33. The Insurer, at the time the Denial Letter 1 was issued, was fully aware that Emerson **had not tendered any Claims to the Insurers for coverage before the Policy had been issued on October 25, 2021**. When I state that Emerson tendered no claims, it included claims relative to the GWG L Bonds and any claim for any other securities claims prior to even the October 25, 2019 retroactive date.

5

DECLARATION OF BALDINI ISO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DUTY TO DEFEND – 4:22-cv-06037-HSG

34. The Insurers have not recanted or withdrawn the denial of coverage position on any or all of the claims.

35. The Insurers have denied the claims with erroneous findings not factually supported.

36. First, the GWG L Bonds are publicly registered securities offered by prospectus. There is absolutely no factual or legal support for the Insurers' finding that the GWG L Bonds were "private placement" investments. A private placement is offered under Regulation D of the Securities Act of 1933, as amended, and offered by private placement memorandum. Publicly registered securities, on the other hand, are offered by prospectus. The GWG L Bonds were publicly registered securities offered by prospectus.

37. Second, Emerson facilitated sales of the GWG L Bonds to certain qualified customers as a fully disclosed independent broker-dealer. The transactions were conducted in accord with FINRA Rule 2111's suitability rule, which requires a member firm or associated person to have a reasonable basis to believe a recommended transaction or investment strategy involving a security or securities is suitable for the customer at the time of the investment transaction. There is absolutely no factual support for the Insurers' finding that the GWG L Bonds involved "Advisory or consulting services with respect to mergers & acquisitions and capital raising." (Endorsement No. 2) First, Endorsement No. 2 limitedly applies to "Private Placement Coverage Amendatory Endorsement." GWG L Bonds were not private placements, so this endorsement is inapplicable.

38. Third, the Policy negotiated between me and Alliant, for Emerson, and the Insurers, on the other hand, provided comprehensive insurance coverage for all of Emerson's business lines including GWG.

39. Fourth, if the Insurers' basis for denial under Endorsement No. 8 is deemed to be correct, the Policy would be illusory and provide no insurance coverage to Emerson because all Wrongful Acts must arise before a Claim can be filed.

DocuSign Envelope ID: 1CC884F9-E292-46E3-8821-989CAC8D533F

40. I believe and it was my intent and understanding for Emerson that Endorsement No. 8 was a retroactive date intended to exclude **Claims** made before October 25, 2019. It reads in material part: "…for Loss in connection with any Claim, including any Interrelated Wrongful Act(s), occurring prior to 25th October 2019." I believe and it was my intent and understanding that the Policy defined a Claim as a demand for money, a court action or an arbitration demand. Emerson had no Claims regarding GWG before the October 25, 2019 retroactive date. The denial of coverage based on Endorsement No. 8 is erroneous.

41. I also never believed and never understood that the Insurers could deny a Loss in connection with any Claim that occurred within the policy period by relying on this endorsement since the operative phrase is "…Loss in connection with any Claim…" I gave it the plain meaning that entire phrase meant that if a Claim was made before the retroactive date, a later Wrongful Act, if Interrelated, could conceivably be subject to this endorsement. Emerson had no GWG Claims before October 25, 2019 so I do not consider this endorsement applicable.

42. Also, informing my belief and intent that Endorsement No. 8 was a retroactive date for **Claims** was that the exact language appeared in the Insurers' insurance policies for the two consecutive policy years before this Policy was issued. Restated, Endorsement No. 8 does not suddenly arise in the Policy at issue here. Endorsement No. 8 has been in the prior two Policies bound by Insurers to Emerson. True and correct copies of these two prior policies are attached as Exhibits G and H. These exhibits show that two years of the Insurers' written policies excluded retroactive Claims not retroactive Wrongful Acts.

43. It is my belief, understanding and intent that the Insurers have *ratified* the language in Endorsement No. 8 as excluding Claims made before October 25, 2019. When I read Denial Letter 1 and Denial Letter 2, I noticed that the Insurers substitute "Wrongful Act" for "Claims" to erroneously broaden the Policy language to justify a bad

7

DECLARATION OF BALDINI ISO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DUTY TO DEFEND – 4:22-cv-06037-HSG

faith denial of claims. As Emerson's CEO, I never believed, intended or understood that Endorsement No. 8 excluded Wrongful Acts that occurred before October 25, 2019.

44.   After the Insurers wrongfully and erroneously denied the covered claims tendered within the Policy Period, my insurance brokers at Alliant wrote an email to the Insurers fully explaining reasons that their denials of coverage were wrong. A true and correct copy of Jacqueline Vinar's email dated June 14, 2022 is attached as Exhibit I. I agree with the substance of Ms. Vinar's letter. I do not recall receiving a response from the Insurers to Ms. Vinar's email.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I executed this declaration on May 6, 2023 in San Mateo, California.

*DocuSigned by: Dominic Baldini*
6F2CBD02C20A411...

DOMINIC BALDINI