UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMERSON EQUITY, LLC, | Case No. 22-cv-06037-HSG |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY** |
| v. | **JUDGMENT AND DENYING** |
| FORGE UNDERWRITING LIMITED, et al., | **PLAINTIFF'S MOTION TO ENFORCE** |
| Defendants. | Re: Dkt. Nos. 90, 96 |

Before the Court are Plaintiff's motion to enforce the Court's prior order granting Plaintiff's motion for partial summary judgment, Dkt. No. 90, and Defendants' motion for partial summary judgment, Dkt. No. 96. The Court **GRANTS** Defendants' motion for partial summary judgment and **DENIES** Plaintiff's motion to enforce.

I.   **BACKGROUND**

Emerson Equity, LLC ("Plaintiff") is a financial services company. Defendants Forge Underwriting Limited; Voltane International; and Certain Underwriters at Lloyd's, London Subscribing to Securities Broker/Dealer Professional Liability (collectively, "Defendants") issued a professional liability insurance policy to Plaintiff. As described in more detail in the Court's prior order in this case, Defendants denied coverage for certain claims known as "L Bond" claims that Plaintiff submitted to Defendants. *See Emerson Equity, LLC v. Forge Underwriting Ltd.*, 707 F. Supp. 3d 900, 904 (N.D. Cal. 2023) ("Order"). In 2022, Plaintiff filed this lawsuit in San Mateo Superior Court alleging breach of written contract, breach of the implied covenant of good faith, and for declaratory relief, and Defendants removed the case to this Court based on diversity jurisdiction. Dkt. No. 1.

In 2023, Plaintiff filed a motion for partial summary judgment seeking a determination that

United States District Court
Northern District of California

Defendants owed a duty to defend the L Bond claims.  Dkt. No 44.  Plaintiff argued that a provision of the policy called Endorsement No. 8, which provides that "the Insurer shall not be liable [to] make payment for Loss in connection with any Claim, including any Interrelated Wrongful Act(s), occurring prior to 25th October 2019," was intended to exclude from coverage only claims filed before that date (the "retroactive date").  Order at 907.  According to Plaintiff, although the L Bond claims alleged wrongful acts committed prior to the retroactive date, the claims should be covered because they were submitted after the retroactive date and thus within the coverage period.  *Id.*  But Defendants argued that Endorsement No. 8 excluded all claims that alleged wrongful acts occurring prior to the retroactive date without regard to when the claim was filed.  *Id.* at 907–908.  Under this interpretation, Defendants had no duty to defend the L Bond claims, which all alleged wrongful acts occurring prior to the retroactive date.  *Id.*

The Court granted Plaintiff's motion for partial summary judgment in December 2023. *See* Dkt. No. 81.  First, the Court found that the language of Endorsement No. 8 was ambiguous, and that Defendants' submissions as to what they believed the policy to mean at the time of formation failed to resolve the ambiguity.  Order at 908.  The Court then reviewed the evidence regarding the parties' expectations in accordance with the principle under California law that "ambiguity is resolved in favor of coverage . . . to protect 'the objectively reasonable expectations of the insured.'"  *See* Order at 909 (quoting *Montrose Chemical Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 667 (1995) (en banc) ("*Admiral Ins. Co.*")).  Ultimately, the Court found Plaintiff's interpretation of Endorsement No. 8 plausible and held that Defendants had a duty to defend the L Bond claims.  Order at 911.

In January 2024, Plaintiff demanded payment from Defendants of over $2 million in defense costs incurred by Plaintiff in defending the L Bond claims.  Dkt. No. 98 ("Opp.") at 13. In response, Defendants advised Plaintiff of their position that under the policy, the L bond claims constituted a single claim for liability purposes, and that the claim was subject to a $1 million limit of liability.  Dkt. No. 96 ("Mot.") at 16.  Rejecting this position, Plaintiff filed a motion to enforce the prior Order, asking the Court to require Defendants to reimburse the total amount of the defense costs Plaintiff claimed.  *See* Dkt. No. 90 at 2.  Defendants, in turn, made a $1 million

1    payment to Plaintiff, which in their view terminated any duty to defend the L Bond claims.

2    Mot at 16.  Defendants then filed this motion for partial summary judgment, seeking a

3    determination that potential coverage for the L Bond claims is limited to $1 million and that their

4    $1 million payment extinguished any further obligation to provide coverage with respect to those

5    claims.  *Id.* at 18.  The Court held a hearing on the motion for partial summary judgment in May

6    2024.  Dkt. No. 107.

### II.    LEGAL STANDARD

8         Summary judgment is proper when a "movant shows that there is no genuine dispute as to

9    any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

10   A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson*

11   *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute is "genuine" if there is evidence in

12   the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party.  *Id.*

13   But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from

14   the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec.*

15   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence

16   or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997),

17   *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

18        If, however, a moving party carries its burden of production, the nonmoving party must

19   produce evidence to support its claim or defense."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,

20   210 F.3d 1099, 1103 (9th Cir. 2000).  In doing so, the nonmoving party "must do more than

21   simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec.*

22   *Indus. Co.*, 475 U.S. at 586.  A nonmoving party must also "identify with reasonable particularity

23   the evidence that precludes summary judgment."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.

24   1996).  If a nonmoving party fails to produce evidence that supports its claim or defense, courts

25   enter summary judgment in favor of the movant.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

26   (1986).

27   //

28   //

*United States District Court*
*Northern District of California*

### III.    DISCUSSION

This latest dispute once again turns on the language of provisions in the insurance policy between the parties.  Interpretation of an insurance policy is a question of law.  *Mirpad, LLC v. California Ins. Guarantee Assn.*, 132 Cal. App. 4th 1058, 1069 (2005).  While insurance contracts have special features, they are still contracts to which the ordinary rules of contract interpretation apply.  *Id.*  Under those rules, the mutual intention of the parties at the time the contract is formed governs its interpretation.  *Admiral Ins. Co.*, 10 Cal. 4th at 666.  Such intent is to be inferred, if possible, solely from the written provisions of the contract.  *Id.*  A policy provision is ambiguous when it can have two or more reasonable constructions.  *Safeco Ins. Co. of America v. Robert S.*, 26 Cal. 4th 758, 763 (2001).

Defendants rely on two policy provisions to argue that the Court should grant partial summary judgment in their favor on the limit of liability issue.  First, Defendants argue that Exclusion (f) of the policy "makes clear that only a $1 million limit of liability can possibly apply" to Plaintiff's L Bond claims.  Mot. at 13.  Exclusion (f) provides:

> "The Insurer shall not be liable for Loss in connection with any Claim made against an Insured: alleging, arising out of, based upon or attributable to any Wrongful Act occurring prior to the Retroactive Date stated in Item [5] of the Declarations or arising out of any subsequent Interrelated Wrongful Act."

Dkt. No. 77 at 61.  Exclusion (f) references Item 5 of the Declarations, which sets the following retroactive date:

> "Retroactive Date: 11th November 2004, but 25th October 2019 in respect of USD 4,000,000 aggregate limit of liability in excess of USD 1,000,000 aggregate limit of liability."

Dkt. No. 77 at 54.  According to Defendants, read together, these provisions "operat[e] to limit Loss to a $1 million aggregate limit of liability in connection with any Claim arising out of Wrongful Acts occurring prior to October 25, 2019 and/or any subsequent Interrelated Wrongful Acts."  Mot. at 21.

Second, Defendants contend that Endorsement No. 7 also confirms their interpretation of

the limit of liability under the policy.  Endorsement No. 7, titled "LIMIT OF LIABILITY

RETROACTIVE DATE(S) ENDORSEMENT," states:

> "It is hereby understood and agreed that, with respect to the following Limit(s) of Liability,
> the Insurer shall not be liable [nor] make payment for Loss in connection with any Claim,
> including any Interrelated Wrongful Act(s), occurring prior to 25th October 2019.
> USD 4,000,000 each Claim and in the aggregate in excess of USD 1,000,000 each Claim
> and in the aggregate.
>
> All other terms, conditions and limitations remain unchanged."

Dkt. No. 77 at 78.  According to Defendants, because Endorsement No. 8 bars claims filed prior to

the retroactive date, the only reasonable interpretation of Endorsement No. 7 is that "it limits

potential coverage for a Claim to $1 million if such Claim involves actual or alleged Wrongful

Acts before October 25, 2019, and/or subsequent Interrelated Wrongful Acts."  Mot. at 23.  On the

other hand, "[i]f a Claim first made during the Policy Period includes only alleged Wrongful Acts

occurring after October 25, 2019, that Claim is subject to a $5 million limit of liability."  *Id.*  Thus,

because "[i]t is undisputed that the L Bond Claim is a single Claim that involves Wrongful Acts

occurring prior to October 25, 2019 and subsequent Interrelated Wrongful Acts," the L Bond

claims are subject to the $1 million aggregate limit of liability.  *Id.* at 25.  And finally, because

Defendants have already paid $1 million on the claim, their obligations on it are extinguished.  *Id.*

Plaintiff appears to agree with Defendants' interpretation of Exclusion (f).  *See* Opp. at 16.

("Exclusion (f) imposed a $1 million cap for Claims based on Wrongful Acts that occur prior to

the retroactive date…").  But Plaintiff argues that Endorsement No. 7 modifies Exclusion (f) by

"tying the $1 million cap to any Claim, including any Interrelated Wrongful Act(s), occurring

prior to 25th October 2019 as opposed to any Claim arising out of any Wrongful Act occurring

prior to October 25, 2019."  Opp. at 23; Dkt. No. 97 at 8.  Plaintiff's argument relies on the fact

that the "Claim, including any Interrelated Wrongful Act(s)" language from Endorsement No. 7 is

similar to the language of Endorsement No. 8.  The Court previously found that provision to be

ambiguous, and ultimately determined that it was plausibly read to bar claims filed before the

retroactive date, as opposed to barring any claim alleging a wrongful act occurring prior to the

1    retroactive date.  *See* Order at 909.  By Plaintiff's logic, because the language is similar, the

2    liability limit in Endorsement No. 7 also applies only to *claims* filed before the retroactive date,

3    which would not include the L Bond claims.  *See* Opp. at 17, 25 ("Plaintiff's intent and

4    expectation was that the $1 million cap in Endorsement 7 would only apply where "Claims" are

5    filed prior to the October 25, 2019 retroactive date.").  Further, Plaintiff argues, because Exclusion

6    (f) and Endorsement No. 7 conflict with each other, "[u]nder well-settled California law,

7    Endorsement No. 7 prevails."  *Id.* at 23.

8         Given that the parties agree as to the interpretation of Exclusion (f), and because their

9    interpretation is reasonable on its face, the Court will adopt it.  Thus, Exclusion (f) caps claims

10   based on wrongful acts occurring prior to October 25, 2019, at $1 million.  *See* Mot. at 13;

11   Opp. at 16.  This provision would appear to apply to the L Bond claims, which clearly are based

12   on wrongful acts occurring prior to the retroactive date.  *See* Order at 907–908.  The question that

13   remains is whether Endorsement No. 7 requires a different outcome.

14        Returning to the core principle governing contract interpretation under California law, the

15   Court first looks to the written provisions of the contract to infer the mutual intent of the parties.

16   *Admiral Ins. Co.*, 10 Cal. 4th at 666.  Endorsement No. 7 states that "the Insurer shall not be liable

17   [to] make payment for Loss in connection with any Claim, including any Interrelated Wrongful

18   Act(s), occurring prior to 25th October 2019."  Dkt. No. 77 at 78.  Plaintiff argues that because

19   this provision includes similar language to that in Endorsement No. 8, which the Court found to be

20   ambiguous, Endorsement No. 7 must be ambiguous too.  But the Court disagrees.  As the

21   California Supreme Court has clarified, "a court that is faced with an argument for coverage based

22   on assertedly ambiguous policy language" must "interpret the language in context, with regard to

23   its intended function in the policy . . . because language in a contract must be construed in the

24   context of that instrument as a whole, and in the circumstances of that case, *and cannot be found*

25   *to be ambiguous in the abstract*."  *See Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254, 1265 (1992)

26   (internal citations and quotations omitted, emphasis in original); *see also Int'l Bhd. of Teamsters v.*

27   *NASA Servs., Inc.*, 957 F.3d 1038, 1045 (9th Cir. 2020) ("'A [contract] provision will be

28   considered ambiguous when it is capable of two or more constructions, both of which are

United States District Court
Northern District of California

6

1    reasonable.  But language in a contract must be interpreted as a whole, and in the circumstances of

2    the case, and cannot be found to be ambiguous in the abstract.'") (quoting *MacKinnon v. Truck*

3    *Ins. Exch.*, 31 Cal. 4th 635, 648 (2003), *as modified on denial of reh'g* (Sept. 17, 2003)).

4          Here, reading Endorsement No. 7 in light of the circumstances of this case and in the

5    context of the overall agreement between the parties only supports one possible construction of the

6    provision.  The endorsement is explicitly titled "LIMIT OF LIABILITY RETROACTIVE

7    DATE(S) ENDORSEMENT."  Dkt. No. 77 at 78.  It states that "with respect to the following

8    Limit(s) of Liability, the Insurer shall not be liable [to] make payment for Loss in connection with

9    any Claim, including any Interrelated Wrongful Act(s), occurring prior to 25th October 2019,"

10   then includes a limit of liability of "USD 4,000,000 each Claim and in the aggregate in excess of

11   USD 1,000,000 each Claim and in the aggregate."  *Id.*  Though the provisions are convolutedly

12   worded, the parties agree that their plain meaning is that a certain subset of claims subject to

13   coverage under the policy is *also* subject to a $1 million limitation relating in some way to the

14   retroactive date of October 25, 2019.  They just dispute how the retroactive date applies, and

15   which claims are subject to the limitation.  The Court acknowledges that, in the abstract, it is

16   unclear which claims the language of Endorsement No. 7 refers to by limiting Defendants'

17   "payment for Loss in connection with any Claim, including any Interrelated Wrongful Act(s),

18   occurring prior to 25th October 2019."  However, construing this language "in context, with

19   regard to its intended function in the policy," and in the context of the policy "as a whole, and in

20   the circumstances of [the] case," *Bank of the W.*, 2 Cal. 4th at 1265, the only reasonable

21   interpretation of Endorsement No. 7 is that it limits Defendants' liability to $1 million for claims

22   made within the coverage period, and thus after the retroactive date of October 25, 2019, but

23   involving wrongful acts occurring prior to the retroactive date.

24          First, the endorsement explicitly references "retroactive dates," which are established in

25   Item 5 of the policy Declarations.  Item 5 defines the applicability of the retroactive dates with

26   somewhat clearer language: "Retroactive Date: 11th November 2004, *but 25th October 2019 in*

27   *respect of USD 4,000,000 aggregate limit of liability in excess of USD 1,000,000 aggregate limit*

28   *of liability.*"  Dkt. No. 77 at 54 (emphasis added).  The plain meaning of this provision is that

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1    October 25, 2019 is a retroactive date further limiting the availability of the $4 million additional

2    aggregate limit of liability under the policy, such that something that occurs before that date

3    triggers a $1 million limit of liability to apply, instead of the up to $5 million that would otherwise

4    be available under the policy.

5        Endorsement No. 8 then confirms that the event which triggers the application of the $1

6    million liability limit is a covered claim filed within the policy period, but involving a wrongful

7    act that occurred prior to the policy period, i.e. before October 25, 2019.  The Court already found

8    that Endorsement No. 8 "bar[s] only claims filed before the retroactive date" of October 25, 2019.

9    Order at 908.  Plaintiff relied on this interpretation to argue that Defendants had a duty to defend

10   the L Bond claims,[1] and the Court found that interpretation plausible, and accordingly held that

11   Defendants had a duty to defend those claims.  *See* Order at 909.  Plaintiff also represents in its

12   opposition to the current motion that its understanding of the meaning of Endorsement No. 8

13   remains the same.  *See* Opp. at 18 ("Endorsement No. 8 excludes coverage for Claims that occur

14   prior to the retroactive date"); Dkt. No. 109 at 8 (same).  Accordingly, to determine whether a

15   limit of liability might apply to Defendants' coverage of the L bond claims, the Court must

16   harmonize Endorsement No. 7 with the interpretation of Endorsement No. 8 that provides the

17   plausible theory of coverage for the claims in the first place.  *See Int'l Bhd. of Teamsters*, 957 F.3d

18   at 1045 (citing "fundamental canon requiring courts to construe contract terms in harmony, where

19   possible"); *see also Bank of the W.*, 2 Cal. 4th at 1271 (rejecting interpretation of contract term

20   that "contradict[ed]" a party's "theory of coverage").

21       The interpretation of Endorsement No. 8 that plausibly establishes Defendants' duty to

22   defend the L bond claims is that the policy covers claims filed *after* the retroactive date of October

23   25, 2019.  It follows that Endorsement No. 7, which imposes a limit on liability for covered

24

25   _____

     [1] *See* Dkt. No 44 at 11 ("The Insurer heavily relies on Endorsement No. 8 ('No. 8') in the Policy,
26   which excludes coverage for "Claims" occurring before the retroactive date"), 18 (describing that
     the exclusion of coverage in "No. 8 is limited to Claims, not Wrongful Acts, that occurred prior to
     October 25, 2019."), 27 (stating that a retroactive date "prevents coverage for claims that occurred
27   before the retroactive date, even if they are brought during the coverage period"), 28 (representing
     that "it was Emerson's belief and intent that No. 8 was a retroactive date intended to exclude
28   Claims made before October 25, 2019").

8

1   claims, must also apply to claims filed *after* the retroactive date.  Otherwise, if the limit of liability

2   applied to claims filed before the retroactive date (as Plaintiff argues), Endorsement No. 7 would

3   be meaningless, because Endorsement No. 8 excludes such claims from coverage entirely.  *See*

4   *Union Oil Co. v. Int'l Ins. Co.*, 37 Cal. App. 4th 930, 935 (1995) ("an interpretation that gives

5   effect to every clause is preferred over one that would render other policy terms meaningless").

6         Plaintiff attempts to use the Court's prior ruling to argue for this logically incoherent

7   interpretation of Endorsement No. 7, under which the L bond claims will both be subject to

8   coverage under the policy and also evade the $1 million liability limit.  *See* Opp. at 18.

9   ("Endorsement No. 8 excludes coverage for Claims that occur prior to the retroactive date whereas

10  Endorsement No. 7 limits coverage to $1 million for Claims that occur prior to the retroactive

11  date.").  Perhaps tellingly, however, Plaintiff's argument in its opposition to Defendants' motion

12  fails to address, let alone overcome, this glaring inconsistency in its interpretation of the contract.

13        The Court must consider the contract as a whole and may not find language ambiguous "in

14  the abstract."  *Int'l Bhd. of Teamsters*, 957 F.3d at 1045.  Therefore, the only reasonable

15  interpretation of the language of Endorsement No. 7 in light of the totality of the circumstances is

16  that Endorsement No. 7 limits liability to $1 million on any covered claim that is filed after the

17  retroactive date, but that "include[es] any Interrelated Wrongful Act(s)[] occurring prior to 25th

18  October 2019."  Dkt. No 77 at 78.[2]

19        This interpretation also aligns with the meaning of Endorsement (f), which both parties

20  understand to similarly apply a $1 million limit of liability to covered claims arising out of

21  wrongful acts that occurred prior to the retroactive date.  *See* discussion *supra* p. 6.[3]  Interpreting

22  _____

23  [2] Plaintiff argues that its interpretation of Endorsement No. 7 must prevail over Exclusion (f)
    based on the rule that "if a conflict exists between the main body of the policy and an

24  endorsement, the endorsement prevails."  *Haynes v. Farmers Ins. Exch.*, 32 Cal.4th 1198, 1204
    (2004).  But here, the Court finds that the only reasonable interpretation of Endorsement No. 7 is

25  that it limits coverage of claims filed after the retroactive date, but involving earlier wrongful acts,
    to $1 million, which does not conflict with the parties' mutual interpretation of Exclusion (f).

26  [3] Plaintiff argues that such harmonization is impossible, because if Endorsement No. 7 and

27  Exclusion (f) mean the same thing, Endorsement No. 7 is superfluous.  *See* Dkt. No. 109 at 6.  But
    Defendants state that Endorsement No. 7 "was added to the [current] Policy because of the

28  increased coverage bound as of October 25, 2019 and represents the Insurers' willingness to cover
    Claims involving Wrongful Acts, including Interrelated Wrongful Acts, prior to October 25, 2019

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Endorsement No. 7 as consistent with Exclusion (f) accords with the express declaration of

2    Endorsement No. 7 that "[a]ll other terms, conditions and limitations remain unchanged"

3    notwithstanding the endorsement.  *See* Dkt. No. 77 at 78.  In contrast, Plaintiff's argument that

4    Endorsement No. 7 "modifies" Exclusion (f) is inconsistent with this plain language.

5    *See* Opp. at 22.

6          Finally, the Court's interpretation of Endorsement No. 7 here is not inconsistent with its

7    prior determination that the comparable language of Endorsement No. 8 was subject to two

8    reasonable constructions and therefore ambiguous.  *See* Order at 908.  "An ambiguity arises when

9    language is reasonably susceptible to another meaning."  *Golden Gate Way, LLC v. Enercon*

10   *Servs., Inc.*, 572 F. Supp. 3d 797, 812 (N.D. Cal. 2021) (quoting *Pac. Gas & Elec. Co. v. G. W.*

11   *Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33 (1968)).  In the prior order, the Court addressed

12   whether the policy covered the L Bond claims such that Defendants had a duty to defend them.

13   The Court therefore focused on the language of Endorsement No. 8 as the key term defining the

14   scope of coverage, and found its plain language ambiguous as to that question because it was

15   reasonably susceptible to two meanings.  The current motion, however, asks the Court to

16   determine whether any limitation applies to Defendants' liability for covered claims, and to do so,

17   the Court must consider all provisions of the policy that help define coverage and liability,

18   including Endorsement No. 7.  *See Int'l Bhd. of Teamsters*, 957 F.3d at 1045 (holding that the

19   lower court erred in determining that contract term was ambiguous by failing to "use the whole

20   agreement to help interpret the words and phrases it found ambiguous").  And as discussed, in the

21   context of the relevant provisions and the function of the policy as a whole, Endorsement No. 7 is

22   only susceptible to one meaning as to the application of the $1 million limit of liability.

23   Accordingly, even though Endorsement No. 7 uses language similar to Endorsement No. 8,

24   _____

25   subject to a limit of $1 million, which is the limit to which all Claims were subject under
     Plaintiff's prior policies."  Mot. at 17.  The Court finds this explanation reasonable, as the prior
26   policy applied a $1 million liability limit to all claims, but included the same Exclusion (f)
     language as the current policy.  *See* Dkt. No. 77 at 92, 108.  Given that the Exclusion (f) language
27   did not change, the addition of Endorsement No. 7 to the current policy was necessary to reflect
     that the limitation of liability changed from a $1 million dollar blanket limit to two different
28   limits: 1) up to $1 million for covered claims alleging wrongful acts occurring prior to October 25,
     2019; and 2) up to $5 million for covered claims alleging wrongful acts occurring after that date.

"[b]ecause the context elucidates the meaning [of Endorsement No. 7], there is no need to resort to the rule that ambiguities are resolved against the insurer." *See Bank of the W.*, 2 Cal. 4th at 1272.

The Court thus finds that Defendants have met their burden of demonstrating that the facts alleged by Plaintiff "'can by no conceivable theory raise a single issue [that] could bring [the L bond claims] within the policy coverage'" beyond the $1 million liability limit. *Pension Tr. Fund for Operating Engineers v. Fed. Ins. Co.*, 307 F.3d 944, 949 (9th Cir. 2002) (quoting *Montrose Chem.*, 6 Cal.4th at 300). Defendants' liability for claims based on wrongful acts occurring prior to October 25, 2019, which includes the L Bond claims, is therefore limited to $1 million. *See Golden Gate Way, LLC*, 572 F. Supp. 3d at 831 (granting partial summary judgment seeking determination that limit of liability applied to claims, and concluding that potential aggregate liability for claims was limited to what "the parties' agreement provide[d]").

Under California law, when an insurer pays out its full liability coverage limit under a policy, and the policy language limiting an insurer's duty to defend upon exhaustion of the policy limits is "unambiguous, clear, explicit and conspicuous," the insurer is relieved of the duty to defend. *See Johnson v. Cont'l Ins. Companies*, 202 Cal. App. 3d 477, 483, 486 (1988); *see also Ins. Co. of State of Pennsylvania v. Cent. Garden & Pet Co.*, No. C 06-3924 VRW, 2006 WL 3734640, at *7 (N.D. Cal. Dec. 18, 2006) ("If, as here, an insurance policy expressly provides that the duty to defend terminates upon exhaustion of policy limits, and the insurer pays out its policy limits in the payment of settlements or judgments . . . the insurer's defense obligations extinguish, and an insurer is entitled to withdraw from the defense of claims."). Defendants argue that for coverage and liability purposes, the policy treats Plaintiff's L Bond claims as a single claim that involved wrongful acts occurring prior to the retroactive date, Mot. at 20, which Plaintiff appears to concede.[4] Thus, Defendants' liability for Plaintiff's defense costs associated with the L Bond claims is limited to $1 million. Without dispute, Defendants remitted a $1 million payment to

---

[4] *See* Dkt. No. 97 at 12–13 ("Furthermore, it is absolutely Plaintiff's position that it is entitled to the full policy limits of $5,000,000.00 and that there was a *single retention* of $250,000.00; for Plaintiff to assert otherwise would be preposterous, as there have been over 80 claims and at a retention of $250,000.00 per claim, this would have resulted in retention amounts of over $20,000,000.00, exceeding the insurance policy limits of $5,000,000 four times over.") (emphasis added).

United States District Court
Northern District of California

1    Plaintiff to satisfy their duty to defend the L Bond claims, *see* Mot. at 20 and Opp. at 8, and the

2    policy expressly provides that their duty to defend terminates once the policy limit is exhausted.

3    *See* Dkt. 77 at 57 ("In all events, the Insurer shall not be obligated to settle any Claim, pay any

4    Loss or undertake or continue defense of any Claim after the applicable Limit of Liability has been

5    exhausted by settlement of a Claim(s) or payment of Loss.  In each such case, the Insurer shall

6    have the right to withdraw from the further defense of the Claim by tendering control of the

7    defense to the Insured(s).").  As such, the Court holds that Defendants have exhausted their

8    obligations under the policy as to the L Bond claims, and **GRANTS** their motion for partial

9    summary judgment on that basis.

10   **IV.    MOTION TO ENFORCE PRIOR ORDER**

11         Plaintiff's motion to enforce asks the Court to "direc[t] Defendants to issue immediate

12   payment for Plaintiff's reasonable defense costs incurred to date, as well as interest on the same,

13   and to continue doing so on an on-going basis as those fees and costs are subsequently incurred by

14   Plaintiff in connection with the L Bond claims."  Dkt. No. 90 at 13.  The Court has determined

15   that under the parties' agreement, a $1 million aggregate limit of liability applies to Defendants'

16   duty to defend Plaintiff's L Bond claims.  Defendants' payment of $1 million to Plaintiff satisfied

17   that obligation.  Plaintiff's motion seeking an order requiring Defendants to reimburse Plaintiff's

18   defense costs beyond that limit set out in the policy is therefore **DENIED**.

19   **V.    CONCLUSION**

20         The Court **GRANTS** Defendants' motion for partial summary judgment with respect to the

21   limitation of liability under the policy, Dkt. No. 96.  The Court concludes that Defendants'

22   potential aggregate liability for the claims Plaintiff asserts in this matter is limited to $1 million,

23   and that limit of liability has been exhausted.  On that basis, the Court also **DENIES** Plaintiff's

24   motion to enforce the Court's prior order, Dkt. No. 90.

25         The Court further **SETS** case a case management conference on September 24, 2024, at

26   2:00 p.m.  The hearing will be held by Public Zoom Webinar.  All counsel, members of the public,

27   and media may access the webinar information at https://www.cand.uscourts.gov/hsg.  All

28   attorneys and pro se litigants appearing for the case management conference are required to join at

United States District Court
Northern District of California

least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities.

**IT IS SO ORDERED.**

Dated:     9/18/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge